UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BILLY V. VANN, ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:11-cv-0525 |
| v. ) | Judge Wiseman/Brown |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| Defendant. ) | |

To: The Honorable Thomas Wiseman, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits (DIB), as provided under Title II of the Social Security Act (the "Act"), as amended. Currently pending before the Magistrate Judge are Plaintiff's Motion for Judgment on the Record and Defendant's Response. (Docket Entries 9, 10, 15). Plaintiff has also filed a Reply. (Docket Entry 16). The Magistrate Judge has also reviewed the administrative record ("Tr."). (Docket Entry 5). For the reasons set forth below, the Magistrate Judge **RECOMMENDS** the Plaintiff's Motion be **GRANTED in part** and this action be **REMANDED** to the Commissioner for proceedings consistent with this Report and Recommendation.

## I. INTRODUCTION

Plaintiff filed his application for DIB on August 2, 2007, with an alleged onset date of April 27, 2007. (Tr. 97). His claim was denied initially and upon reconsideration. (Tr. 56, 61). On June 22, 2010, at Plaintiff's request, a hearing was held before Administrative Law Judge ("ALJ") Daniel Whitney. (Tr. 26). ALJ Whitney issued a decision denying Plaintiff benefits on July 20,

1

2010. (Tr. 9-21).

In his decision denying Plaintiff's claims, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
2. The claimant has not engaged in substantial gainful activity since April 27, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).
3. The claimant has the following severe impairments: Degenerative Disc Disease, status post discectomy and fusion; Major Depressive Disorder (20 CFR 404.1520(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, consistent with the perform light work as defined in 20 CFR 404.1567(b) except as follows: The claimant is limited to jobs that take into account sitting, stand, and/or walking limitations of no more than two hours of each at a time (but with up to six hours of each, total, in an eight hour work day). He is further limited to jobs that involve only occasional pushing, pulling, climbing, balancing, stooping, kneeling, crouching, or crawling; with frequent reaching, handling, fingering, or feeling. He is further limited to jobs requiring only occasional exposure to cold, heat, humidity and wetness, vibration, fumes, odors, gases, or poor ventilation, with only moderate exposure to noise, and no exposure to hazardous machinery or unprotected heights. As to mental limitations, the claimant is limited to jobs involving only simple and low level detailed tasks, will have some but not substantial difficulty sustaining concentration and persistence for the above tasks, will experience some but not substantial difficulty interacting with the public, and can adapt to infrequent change.
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
7. The claimant was born on March 7, 1961, and was 46 years old, which is defined as a younger individual, age 18-49, on the alleged disability onset date (20 CFR 404.1563).
8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).
9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
10. Considering the claimant's age, education, work experience, and residual

functional capacity, there are jobs that exist in significant numbers in the national
        economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
    11. The claimant has not been under a disability, as defined in the Social Security Act,
        from April 27, 2007, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 16-21).

The Appeals Council denied Plaintiff's request for review on April 7, 2011. (Tr. 1-5). This action was timely filed on June 3, 2011. (Docket Entry 1).

## II. REVIEW OF THE RECORD

Plaintiff was born on March 7, 1961. (Tr. 33). He attended school until the eighth grade and claims he is illiterate. (Tr. 34). His wife apparently filled out his disability forms. (Tr. 129-48, 162-69).

Plaintiff saw Dr. Ligon for primary care for many years. (Tr. 285-321). On November 11, 2005, his records reflect Plaintiff had low back pain for two months. (Tr. 290). On March 19, 2007, he reported pain radiating down his left leg. (Tr. 292).

On January 1, 2006, Plaintiff was treated at Trinity Hospital for back and sciatic pain. (Tr. 301). Plaintiff first visited the Southern Spine Center on January 23, 2006. (Tr. 274-75). Dr. Tarek Elalayli noted Plaintiff had a two-month history of low back pain radiating into his left leg. The pain became much worse three weeks before the appointment when Plaintiff bent over to tie his shoes, and he could not walk for two weeks due to pain. *Id*. An MRI showed a large disc herniation and degenerative disc disease and retrolisthesis. *Id*. Dr. Elalayli recommended surgery and advised Plaintiff he might require a second procedure due to the level of degeneration. *Id*. Plaintiff had a discectomy at L5/S1 on January 26, 2006. (Tr. 268-69).

On February 13, 2006, Plaintiff had a follow-up appointment with Dr. Elalayli. (Tr. 260). He noted Plaintiff was "doing extremely well" and anticipated Plaintiff returning to work in about

four weeks. *Id*.

Plaintiff returned to Dr. Elalayli's office on May 21, 2007. (Tr. 235). He had significant difficulty moving around, and an MRI showed evidence of a large recurrent disc herniation and degenerative changes. Dr. Elalayli scheduled surgery to alleviate Plaintiff's severe pain. *Id*.

Plaintiff had a second back surgery at Summit Medical Center on May 22, 2007. (Tr. 182-99). The surgery consisted of a posterior spinal fusion, transverse lumbar interbody fusion, redo discectomy, posterior instrumentation, and insertion of carbon fiber interbody spacer, all at L5/S1. *Id*.

On June 28, 2007, Plaintiff had a follow-up appointment with Dr. Elalayli. (Tr. 223). His leg pain was resolved, and Dr. Elalayli prescribed physical therapy. *Id*.

At a follow-up appointment on August 8, 2007, Plaintiff noted his feeling that physical therapy was aggravating his back somewhat. (Tr. 213). All preoperative leg pain was resolved, but Plaintiff still had back pain and stiffness. *Id*. Dr. Elalayli discontinued Plaintiff's physical therapy and gave him a prescription for a home exercise and stretching program. *Id*.

On October 25, 2007, Plaintiff saw Dr. Elalayli for a follow-up 6 months after his surgery. (Tr. 205). Dr. Elalayli noted Plaintiff has no leg pain but continues to have back pain. However, Plaintiff had not been compliant in his home exercise program. Plaintiff's range of motion was significantly restricted, with diffuse tenderness throughout his spine along the paraspinal musculature. He urged Plaintiff to do the exercises prescribed and gave him a TENS unit. Dr. Elalayli noted, "At this point he is likely a candidate for permanent disability, as he has only an 8th grade education. He used to work construction and I do not feel that he is ever going to be able to get back to working construction." *Id*.

Michael N. Ryan, M.D., completed a consultative residual functional capacity ("RFC") assessment based on Plaintiff's medical records on January 18, 2008. (Tr. 330-37). He noted that this RFC was projected to one year after Plaintiff's second surgery on May 22, 2007. *Id*. He believed Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand two hours an in eight-hour workday, and sit six hours in an eight-hour workday. He could occasionally climb ladders, ropes, and scaffolds, and could occasionally stoop, crouch, and crawl. He should avoid concentrated exposure to vibration. *Id*.

Dr. Ligon, Plaintiff's primary care physician, completed an ability to do work-related activities assessment dated February 5, 2008. (Tr. 338-39). Dr. Ligon believed Plaintiff could occasionally lift 10 pounds, could frequently lift less than 10 pounds, could stand and/or walk less than two hours in an eight-hour workday, could sit less than four hours in an eight-hour workday, and must change positions every 30 minutes. *Id*.

Robert Adams, M.D., performed a consultative exam on May 1, 2008. (Tr. 340-42). He noted Plaintiff had an abnormal ability to lift a 10-pound weight while seated due to weakness. Plaintiff was able to get out of a chair with difficulty and onto and off the examination table with difficulty. He walked with a normal gait but there was much limitation of the left leg at the hip. Dr. Adams was unable to make a determination about Plaintiff's ability to perform stated medical assessment tasks due to the brevity of the exam. *Id*.

A hip x-ray dated May 1, 2008 showed mild to moderate bilateral hip osteoarthritis. (Tr. 343).

Marvin H. Cohn, M.D., prepared a consultative RFC dated July 7, 2008. (Tr. 344-51). He believed Plaintiff could occasionally lift 50 pounds and frequently lift 25, he could stand an/or

walk six hours in an eight-hour workday, and could sit six hours in an eight-hour workday. Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. *Id*. He believed Dr. Ligon's opinion should carry no weight because it was not supported by objective findings, particularly conflicting with the lumbar range of motion which was full in May 2008. Dr. Cohn noted incorrectly that Plaintiff had no follow-up with Dr. Elalayli since August 2007. *Id*. Plaintiff saw Dr. Elalayli on October 25, 2007, as described above.

Robert Reasonover performed a consultative psychological exam on July 29, 2008. (Tr. 352-57). He noted Plaintiff walked with a limp, slow gait. Plaintiff suffered from depression for approximately one year, which was related to his health problems and inability to do the work he once did. He sometimes experiences suicidal ideation, but he had no history of suicide attempts. Plaintiff had no history of mental health treatment. He had a history of alcohol abuse but quit drinking approximately one year ago. When in school, Plaintiff needed a resource class for reading. (Tr. 353). Plaintiff's intellectual functioning was possibly within the borderline range. (Tr. 355).

Plaintiff reported he is able to bathe and dress himself with no reminders to care for his personal hygiene. He watches television for seven to eight hours per day. He cannot read well. He sometimes attends church. He is able to mow his yard with a riding mower and can drive. He is not able to follow oral or written instructions due to comprehension difficulties. He can count change but cannot handle a checkbook or make financial decisions. He has bad days four to five days per week. He can no longer hunt, fish, or work. (Tr. 353-55). Reasonover concluded Plaintiff was moderately limited in the abilities to understand and remember and to sustain concentration and persistence, as well as moderately limited in social interaction and adaptation. (Tr. 356).

6

P. Jeffrey Wright, Ph.D., prepared a consultative psychiatric assessment and mental RFC dated September 9, 2008. (Tr. 358-74). He believed Plaintiff could understand and remember for simple and low level detailed tasks. He would have some but not substantial difficulty sustaining concentration and persistence for the above tasks. He would experience some but not substantial difficulty interacting with the public. He could adapt to infrequent change. *Id*.

Plaintiff saw Dr. Patricia Mitchum as his primary care physician beginning in October 2008. She prescribed medication for his back pain and depression that stayed essentially constant from October 2008 to June 2010. (Tr. 409-25).

Horace Watson, M.D., performed a consultative exam on February 25, 2010 and submitted a medical source statement. (Tr. 378-85). He believed Plaintiff could lift 10 pounds frequently and 20 pounds occasionally, and could sit, stand, or walk up to six hours in an eight-hour day, two hours at a time. He could occasionally push and/or pull, climb stairs and ramps, balance, kneel, and crawl. He should never crouch, stoop, or climb ladders or scaffolds. Plaintiff should never be around unprotected heights or moving mechanical parts. He could occasionally operate a motor vehicle, and he could occasionally be around humidity and wetness, dust odors, heat, cold, and vibrations. Plaintiff had full range of motion of the cervical spine and thoracic spine but limited motion in the lumbar spine with 50 degrees flexion, 10 extension, and 20 of lateral bend of each side. He had a full range of motion in all the joints of all four extremities. *Id*.

Dr. Elalayli prepared a physical capacity evaluation dated August 12, 2010, which was not evaluated by the ALJ. (Tr. 425). He believed Plaintiff could occasionally lift up to 20 pounds and carry up to 10. Plaintiff should never squat, climb, or stoop and should have a moderate reduction in exposure to unprotected heights. Plaintiff must lie down or prop up his feet for ten minutes

7

every hour. *Id*.

At the hearing, Plaintiff testified that he worked as an iron worker and construction worker. (Tr. 31-32). He has an eighth grade education and reads and writes "very little." (Tr. 34). He testified he was in special classes for reading and spelling. (Tr. 43). His wife receives Social Security disability benefits. (Tr. 34).

Plaintiff stated he can no longer lift heavy weights due to the plate in his back. (Tr. 35-37). He had two back surgeries, one in 2006 and one in May 2007. (Tr. 36). His disc burst when he went to put on his shoes one morning. (Tr. 37). He experiences lower right back pain while driving or sitting. (Tr. 37). He can sit for a couple of hours before his legs begin to go numb. (Tr. 38). After his legs go numb, Plaintiff cannot walk for a few minutes. (Tr. 38). Plaintiff can lift 10-15 pounds. (Tr. 39). Bending over and lifting are his biggest problems. (Tr. 39-40).

Plaintiff did not take pain medication before his hearing. (Tr. 46-47). He lays down three to four hours every day. (Tr. 47). He can walk about 500 yards before becoming tired and sore. (Tr. 47). He does not know if he could do a sit-down job all day. (Tr. 48).

Plaintiff stated he did not drive to the hearing because traffic makes him nervous. (Tr. 43). He has been in counseling for his "nerves," which has been helpful. (Tr. 43-44).

Plaintiff stated his wife takes care of calling doctors' offices. (Tr. 45). She also completed his disability paperwork because he cannot spell or write well. (Tr. 45-46). He does have a valid driver's license, but it took two tries to pass the written examination, and he just guessed at the answers. (Tr. 46).

Vocational expert ("VE") Gary Sturgill testified that Plaintiff's past work was heavy and semi-skilled. (Tr. 30-31). The ALJ asked the VE to assume a hypothetical individual of the same

age as Plaintiff and with the same education and work history. The ALJ asked if such a hypothetical individual could perform his past work if he was limited to sitting up to 6 hours in an 8-hour workday and standing and walking up to 4 hours in an 8-hour workday; with the ability to lift and carry up to 20 pounds occasionally and 10 pounds frequently; able to frequently climb except for occasional climbing of ladders, ropes and scaffolds; able to frequently balance, occasionally stoop, frequently kneel, and occasionally crouch and crawl; and with the ability to understand and remember simple and low-level detailed tasks, with some but not substantial difficulty in sustaining concentration and persistence for the above tasks, who will experience some but not substantial difficulty interacting with the public, and who can adapt to infrequent change. (Tr. 48-49). The VE noted Plaintiff's past work was eliminated, but such an individual could work as an unarmed security guard (900 in Tennessee/50,000 nationwide), a personal care attendant (600 in Tennessee/36,000 nationwide), or as an order clerk (800 in Tennessee/39,000 nationwide). (Tr. 49). These figures are for unskilled, light work for persons having seven to twelve years of education. *Id*.

The ALJ then asked the VE to consider the same hypothetical individual if that individual could sit up to 6 hours and stand or walk for 6 hours, with no more than 2 hours at a time in each position; with the same lifting and carrying restrictions; with occasional pushing and pulling, climbing, balancing, stooping, kneeling, and crawling; with no climbing ladders, ropes, or scaffolds or crouching; with frequent reaching, handling, fingering, feeling; with occasional exposure to cold and heat, wetness, humidity, vibration, fumes, odors, gases, and poor ventilation; with exposure to moderate (office-type) noise; and who must avoid all hazardous machinery and unprotected heights. (Tr. 49-50). The VE believed such an individual could do the same work

9

identified in the first hypothetical. (Tr. 50).

If the hypothetical individual was unable to lift and carry more than 10 pounds and was able to stand and/or walk less than 2 hours in an 8-hour day and sit less than 4 hours in an 8-hour day, no work would be available. (Tr. 50). If the individual had to lie down for medical reasons for as much as an hour a day, no work would be available. (Tr. 50).

### III. PLAINTIFF'S STATEMENT OF ERROR AND CONCLUSIONS OF LAW

In his Motion, Plaintiff alleges four errors. First, the ALJ erred in rejecting Dr. Ligon's opinion. Second, the ALJ erred in failing to contact Dr. Elalayli for clarification of his opinion. Third, this action should be remanded to consider Dr. Elalayli's opinion issued after the ALJ's decision. Fourth, the ALJ erred in failing to consider the effects of Plaintiff's illiteracy. As discussed below, the Magistrate Judge believes this action should be remanded to consider the effects of Plaintiff's alleged illiteracy and to consider Dr. Elalayli's opinion. Because the Magistrate Judge believes remand is appropriate in this case, the Magistrate Judge has not considered the first two errors alleged by Plaintiff.

A.  <u>Standard of Review</u>

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999)

(*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

B.  Proceedings at the Administrative Level

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

11

> despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> 5. Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *See Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.*; *see also Moon*, 923 F.2d at 1181. In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through VE testimony. *See Wright*, 321 F.3d at *616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); *see also Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

C. <u>The ALJ Did Not Appropriately Consider Plaintiff's Alleged Illiteracy</u>

An ALJ is required to consider a claimant's education as a vocational factor. 20 CFR § 404.1564(a). A person with an eighth grade education, like Plaintiff, is considered to have a "limited education." 20 CFR § 404.1564(b)(3). However, "the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or

lower." 20 CFR § 404.1564(b). The numerical grade is used where there is "no other evidence to contradict it." *Id*. Here, however, the ALJ ignored significant evidence regarding Plaintiff's education level and did not have substantial evidence for concluding Plaintiff was literate.

In his Motion, Plaintiff cites several references to Plaintiff's functional illiteracy, ranging from his testimony at the hearing to his intake at Centerstone. (Tr. 34, 43, 46, 388). Plaintiff's wife apparently completed all his disability paperwork. (Tr. 148). In his Disability Report, Plaintiff stated he could not write more than his name. (Tr. 122). Plaintiff also indicated at his hearing and during his psychological evaluation that he was in special education classes at school. (Tr. 43, 353).

The ALJ, however, apparently did not consider whether Plaintiff's education might not accurately reflect his vocational abilities. The only finding the ALJ made was that Plaintiff has a "limited education and is able to communicate in English." (Tr. 20). There is no discussion of Plaintiff's alleged inability to write more than his name and inability to complete the disability forms. While the Commissioner may eventually find that Plaintiff is not functionally illiterate, the ALJ's failure to consider this as a factor is, in the Magistrate Judge's view, error. *See Skinner v. Sec'y of Health & Hum. Servs.*, 902 F.2d 447, 450-51 (6th Cir. 1990) (noting that "[a] numerical grade level is properly used to determine a claimant's educational abilities only if contradictory evidence does not exist."). Therefore, the case should be remanded for consideration of Plaintiff's literacy.

D.   The ALJ Should Consider Dr. Elalayli's Opinion as New Evidence

On this point, Plaintiff requests a remand pursuant to sentence six of Section 205(g) of the Act, claiming that Dr. Elalayli's August 2010 RFC assessment is new and material evidence. The

Commissioner argues that this evidence is cumulative, in part because it is consistent with the RFC submitted by Dr. Ligon and rejected by the ALJ. However, Dr. Ligon's opinion is more than two years older than Dr. Elalayli's. (Tr. 338-39, 425). While the Magistrate Judge may not have recommended this case be remanded based solely on this new evidence, the undersigned believes that this evidence should be considered on remand. Dr. Elalayli's opinion in October 2007 that Plaintiff is "likely a candidate for permanent disability" is somewhat ambiguous, and the ALJ should consider his August 2010 RFC in light of that. (Tr. 205).

## IV. RECOMMENDATION

For the reasons set forth above, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion be **GRANTED in part** and this case be **REMANDED** to the Commissioner for proceedings consistent with this Report and Recommendation.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).                    ENTERED this 23rd day of May, 2012.

/S/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge